IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-314

Filed: 1 September 2020

Forsyth County, No. 09 CVS 2766

K² ASIA VENTURES, Plaintiff,

v.

KRISPY KREME DOUGHNUT CORPORATION, AND KRISPY KREME DOUGHNUTS, INC., Defendants.

Appeal by plaintiff from order entered 13 November 2018 by Judge Anderson D. Cromer in Forsyth County Superior Court. Heard in the Court of Appeals 7 January 2020.

> *Broocks Law Firm, PLLC, by Ben C. Broocks, pro hac vice, and Blanco, Tackabery & Matamoros, P.A., by Chad A. Archer, and Peter J. Juran, for plaintiff-appellants.*

> *Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes, Jason M. Wenker, and Chris W. Haaf, for defendant-appellees.*

BRYANT, Judge.

Where K² Asia Ventures failed to establish that it was a real party in interest, we affirm the trial court's 13 November 2018 order dismissing the action pursuant to Rules 17(a) and 41(b).

On 7 April 2009, in Forsyth County Superior Court, K² Asia Ventures ("K² Asia"), Ben C. Broocks, and James G.J. Crow filed a complaint (amended 7 February 2011) against Robert Trota; Veronica Trota; Joselito Saludo; Carolyn T. Salud;

Roland V. Garcia; Cristina T. Garcia; Jim Fuentebella; Mavis Fuentebella; Sharon Fuentebella; Max's Baclaran Inc.; Chickens R. Us, Inc.; Max's Makati Inc.; Max's Ermita, Inc.; Max's of Manila, Inc.; The Real American Doughnut Company Inc.; Trofi Ventures, Inc.; Ruby Investment Company Holdings, Inc.; Krispy Kreme Doughnut Corporation; and Krispy Kreme Doughnut, Inc. Broocks and Crow were the principals of K² Asia. K² Asia's company, whose principal place of business was in Austin, Texas, was founded to facilitate and promote the opening of Krispy Kreme Doughnuts franchises in Asia. Other than Krispy Kreme Doughnut Corporation and Krispy Kreme Doughnuts, Inc., ("Krispy Kreme"), a company whose principal place of business was in Winston-Salem, North Carolina, the other putative defendants were companies, company owners, or investment companies with business interests in the Philippines.

Per the amended complaint, K² Asia was founded with the objective of bringing Krispy Kreme's franchises to countries in Asia. Believing that Krispy Kreme would require a partnership with a fast-food business operator in each of the target countries, plaintiff contacted representatives of a restaurant group—Max's Group— in regard to potential operations in the Philippines. Max's Group was receptive to the prospect of partnering with Krispy Kreme. K² Asia enticed representatives of Krispy Kreme to travel to the Philippines and meet with representatives of Max's Group. K² Asia provided analysis concerning projected product pricing, product

volumes, ingredient costs, sources for potential alternative ingredients, and potential franchise locations.  K² Asia asserted that during negotiations, it was agreed that should a Krispy Kreme franchise be granted to Max's Group, K² Asia would receive a management fee of one percent (1%) of the gross revenue and a ten percent (10%) equity interest in the operations (with 5% received after the third year and 5% received after the fifth year).  Moreover, K² Asia would be granted the right to acquire additional equity in exchange for contributing twenty-five percent (25%) of the budgeted capital requirements.  In cooperation with Max's Group, K² Asia would be allowed to raise capital from outside investors.  Eventually, Krispy Kreme granted K² Asia exclusive rights to negotiate agreements for franchise rights in the Philippines (the "K² Asia/Krispy Kreme Exclusivity Agreement").  Plans were developed to create a business entity known as "The Real American Doughnut Company, Inc." between Krispy Kreme, Max's Group, and K² Asia.  Max's Group provided a "Memorandum of Understanding" ("MOU") which documented the agreement between K² Asia and Max's Group with regard to K² Asia's interest in the yet to be formed "The Real American Doughnut Company, Inc."  The MOU recited the agreed-upon management fee (1%) but differed as to the previously agreed upon equity interest, which had been ten percent (10%).  The MOU stated that K² Asia's equity interest would be five percent (5%).  It was also communicated that K² Asia need not immediately raise capital funds (which were to be in exchange for additional

equity). Thereafter, Max's Group communicated that K² Asia would not be granted a management fee and would not receive any equity interest. K² Asia alleged that the decision to forego paying K2 Asia the management fee and allowing K² Asia an equity interest was based on the recommendation of Krispy Kreme.

Krispy Kreme and Max's Group ultimately executed a development agreement and a franchise agreement for Krispy Kreme franchises in the Philippines. The franchise agreement listed the ownership interests in Krispy Kreme Philippines franchises. K² Asia did not receive an ownership interest. The Real American Doughnut Company, Inc., was formed, but K² Asia was not included as an interested party. K² Asia alleged that Krispy Kreme required that Max's Group periodically pay Krispy Kreme development fees, franchise fees, royalties, and other fees for each store; submit weekly sales reports for each store; submit annual development plans, sales forecasts, line item margin reviews, and marketing plans; and purchase certain mixes, products, equipment, and fixtures from Krispy Kreme. Representatives of Max's Group traveled to North Carolina for training with Krispy Kreme in July 2006 and for a franchise convention in 2007. K² Asia contended that Max's Group provided large monetary payments to Krispy Kreme and frequently communicated with representatives of Krispy Kreme regarding its ongoing business operations.

Per the complaint, K² Asia, Broock, and Crow sought to recover monetary damages from Krispy Kreme based on theories of breach of contract; intentional

interference with a contractual relationship and/or prospective economic advantage; promissory estoppel; violation of principles of partnership, joint venture, and fiduciary duty; fraud, constructive fraud, and fraudulent inducement; unfair and deceptive trade practices; aiding and abetting breach of fiduciary duty; civil conspiracy; quantum meruit/unjust enrichment; and punitive damages.

Though the motions were not included in the record, court orders in the record state that Krispy Kreme moved to dismiss K² Asia's complaint. The trial court granted the motions in part. The court dismissed all claims asserted by individuals Broocks and Crow, as well as K² Asia's claims for fraud and unfair and deceptive trade practices against Krispy Kreme.

Krispy Kreme filed its answer to K² Asia's complaint on 11 April 2011.

Following a joint motion by Krispy Kreme and K² Asia, on 23 September 2011, then Chief Justice Sarah Parker designated this matter as exceptional and assigned it to the Honorable Anderson Cromer, Superior Court Judge.

On 7 May 2015, Krispy Kreme filed a motion for summary judgment. In its brief filed in support of its motion for summary judgment, Krispy Kreme references an order of the trial court entered on 26 July 2013. Per Krispy Kreme (and acknowledged by K2 Asia) the trial court dismissed all non-resident defendants. Per Krispy Kreme, by the 26 July 2013 order, the court "reduced the case to a few

remaining claims against Krispy Kreme by a purported company called 'K² Asia Ventures.' "

In its motion for summary judgment, Krispy Kreme contended that K² Asia lacked standing to bring a claim.

> 2.      [K² Asia] is not an entity that signed the purported contracts at issue, and the entities that signed those contracts are not parties to the suit.
>
> 3.      Further, there is no evidence that [K² Asia] exist[ed]. Indeed, there is no evidence that the entities that signed the purported contracts exist[ed].

More specifically, Krispy Kreme argued that the MOU—which documented the agreement between K² Asia and Max's Group with regard to K² Asia's interest in the then yet to be formed The Real American Doughnut Company, Inc.—was executed by "K² Asia Ventures, Ltd., a limited partnership, by K² Asia Management, LLC, general partner, by . . . Broocks, Member and Manager." Krispy Kreme points out that in the 26 July 2013 order, the trial court found "neither K² Asia Ventures, Ltd. nor K² Asia Management LLC [wa]s a named plaintiff in this civil action." As to K² Asia's claim against Krispy Kreme for breach of contract, Krispy Kreme argued that "the contract . . . which is referred to in the Amended Complaint as the 'Exclusivity Agreement'— also was executed by 'K² Asia Ventures, Ltd.' " Moreover, Krispy Kreme contended that the only evidence of the existence of K² Asia related to an entity named K² Asia Ventures G.P., a Cayman Island company, which was not a party to the civil suit.

Krispy Kreme argued that it was entitled to summary judgment on all claims because K² Asia had failed to produce any evidence that it existed or had standing to bring the asserted claims.

On 28 May 2015, in response to Krispy Kreme's motion for summary judgment, K² Asia argued that it was a real party in interest.

- o K² Asia Ventures is K² Asia Ventures G.P. [a Cayman Island company] and any failure to include the suffix "G.P." in the caption was a misnomer;

- o K² Asia Ventures G.P. ratified the pre-incorporation [MOU], making it the proper party to sue on the claims that arise from such contract;

- o K² Asia Ventures G.P. is K² Asia Ventures, Ltd.

- o Krispy Kreme is judicially estopped from contending K² Asia is not the real party in interest because it has admitted that K² Asia exists and is the proper party to this litigation.

  In all events, under North Carolina Rules of Civil Procedure and applicable case law, no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest.

K² Asia further contended that the Certificate of Incorporation for K² Asia Ventures G.P., as well as a Memorandum & Articles of Association of K² Asia Ventures G.P., had been provided to Krispy Kreme. K² Asia acknowledged that at the time the MOU was executed, K² Asia Ventures Ltd. did not exist. Broock, president of K² Asia Ventures, "believed that he would, in the near future, create a

company called K² Asia Ventures Ltd." Based on this belief, Broock drafted the K² Asia/Krispy Kreme Exclusivity Agreement using K² Asia Ventures Ltd. as the name of the party to the agreement. However, when the Cayman Island entity was created, it was incorporated as K² Asia Ventures G.P., rather than K² Asia Ventures Ltd. K² Asia further acknowledged that "no such entity with the name of K² Asia Ventures Ltd. was ever registered in the Cayman Islands." Yet, K² Asia argued that Krispy Kreme should be judicially estopped from arguing that K² Asia did not have standing. Alternatively, K² Asia argued that should the trial court rule K² Asia was not a real party in interest, "a trial court should either correct [K² Asia]'s error itself or refuse to hear the motion for summary judgment until the real party in interest is substituted for the plaintiff."

Over three years later, on 13 November 2018, the trial court entered its order on Krispy Kreme's motion for summary judgment. The court stated that it would not "substitute a party on its own motion or upon the invitation extended by [K² Asia] in its brief before the trial court." The court noted that the case had been pending since 2009 and that K² Asia had not filed a motion to substitute the Cayman Island company named K² Asia Ventures G.P. as the real party in interest since 2009 or in the three years since Krispy Kreme raised a clear objection in 2015. The court found this delay not reasonable.

Considering Krispy Kreme's motion for summary judgment made pursuant to Rule 56 as a motion to dismiss pursuant to Rule 41(b),

> [t]he [c]ourt interprets Krispy Kreme's motion for summary judgment, described as a Rule 56 motion, as a motion for dismissal of the action brought by [K² Asia] for failure to prosecute or to comply with the rules of civil procedure, namely failure to comply with Rule 17(a) and prosecute its claims in the name of the real party in interest. As such, the [c]ourt treats [Krispy Kreme's] motion as one made under Rule 41(b). The [c]ourt finds and concludes that, based on the papers submitted and the protracted history of this case, K² Asia Ventures (nothing else appearing), is not the real party in interest. However, the case will be dismissed without prejudice. It is the [c]ourt's view that this result captures the spirit and letter of Rules 17(a) and 41(b) of the North Carolina Rules of Civil Procedure.

K² Asia appeals.

---

On appeal, K² Asia argues that the trial court erred by denying K² Asia's right to amend its complaint and failing to address the issue of misnomer.

*Motion to Amend complaint*

K² Asia argues that the trial court erred by denying its motion to amend the complaint to reflect the real party in interest. K² Asia contends that once Krispy Kreme moved for summary judgment on the basis that K² Asia was not the real party in interest, K² Asia moved the court to amend the complaint to reflect the real party in interest, but three years later, the trial court denied K² Asia's motion. We disagree.

> "[O]ur standard of review for motions to amend pleadings requires a showing that the trial court abused its discretion." *Delta Envtl. Consultants of N.C., Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (1999). . . .  Proper reasons for denying a motion to amend include undue delay, unfair prejudice, bad faith, futility of amendment, and repeated failure of the moving party to cure defects by other amendments. *Delta*, 132 N.C.App. at 166, 510 S.E.2d at 694.

*Revolutionary Concepts, Inc. v. Clements Walker PLLC*, 227 N.C. App. 102, 110, 744 S.E.2d 130, 136 (2013); *see also Key Risk Ins. Co. v. Peck*, 252 N.C. App. 127, 133–34, 797 S.E.2d 354, 358 (2017) ("Where a case is not brought by the real party in interest, it is within the discretion of the trial court to allow a motion to substitute under Rule 17(a)" (citation omitted)).

In *Revolutionary Concepts, Inc.*, 227 N.C. App. 102, 744 S.E.2d 130, this Court considered whether the trial court erred in failing to permit the plaintiff (a post-merger surviving corporation) to substitute itself as the real party in interest pursuant to Rule 17 for the previous merging corporation—which had been a real party in interest.  Prior to the merger, the merging corporation filed a complaint and voluntarily dismissed its claims pursuant to Rule 41(a).  After the voluntary dismissal but prior to the merger, the would-be surviving corporation timely re-filed the claims the merging corporation had voluntarily dismissed.  But at that time, the would-be surviving corporation lacked standing to do so.  For more than three years following the merger, the merger surviving corporation failed to take any action to assert its

standing to bring the claims it had filed pre-merger on the basis that it was the survivor of the merging corporation—the real party in interest. "[W]ithout some action by [the surviving corporation] post-merger to assert those claims as the surviving entity of the merger, its claims brought in [pre-merger] do not automatically incorporate any claims [the merging corporation] could have brought but failed to do so simply by virtue of the merger." *Id.* at 110, 744 S.E.2d at 136. Thus, the trial court denied the merger surviving corporation's motion to substitute itself as the real party in interest pursuant to Rule 17. *Id.* at 112, 744 S.E.2d at 137.

On appeal, this Court held that it

> [could] discern no abuse of discretion in denying the Rule 17 motion because [the] plaintiffs could have substituted [the] post-merger [company] at any point after the August 2008 merger. However, they did not attempt to do so for over three years, until the hearing in January 2012. Although our Courts generally permit liberal amendment of pleadings, here, we believe that the trial court's decision to not allow [the] post-merger [plaintiff] to be substituted as the real party in interest at the summary judgment hearing does not constitute an abuse of discretion. [The p]laintiffs have failed to offer any compelling reason why they failed to do so in a reasonable time after the merger. . . . Therefore, we conclude that the trial court did not abuse its discretion in denying [the plaintiffs'] motion to substitute itself as the real party in interest pursuant to Rule 17.

*Id.*; *see also Street v. Smart Corp.*, 157 N.C. App. 303, 309, 578 S.E.2d 695, 700 (2003) (affirming a trial court's dismissal of an action where the record reflected no attempt or request by the plaintiff to substitute the real party in interest where the plaintiff

"was aware of the real party in interest defense for approximately seven months before the hearing based on defendant's answer and for approximately three weeks based on the motion to dismiss"); *Narron v. Union Camp Corp.*, 81 N.C. App. 263, 269, 344 S.E.2d 64, 68 (1986) (upholding the trial court's dismissal of the action where the plaintiffs failed to prosecute their claims and the record reflected "a long history of foot-dragging by [the] plaintiffs").

Here, the record reflects that on 7 May 2015, Krispy Kreme filed its motion for summary judgment and a brief in support of said motion. Krispy Kreme contended that K² Asia lacked standing to bring the lawsuit because it was not a real party in interest in any of the claims asserted in the amended complaint. Moreover, K² Asia was not the entity which signed the K² Asia/Krispy Kreme Exclusivity Agreement or the MOU. In its brief, Krispy Kreme referenced the trial court's 26 July 2013 order in which the trial court made findings of fact that the MOU—which K² Asia had described as the agreement between K² Asia and Max's Group—was executed by "K² Asia Ventures, Ltd., a limited partnership, by K² Asia Management, LLC, general partner, by . . . Broocks, Member and Manager" and that "neither K2 Asia Ventures, Ltd. nor K2 Asia Management LLC [wa]s a named plaintiff in this civil action." As to K² Asia's claim(s) against Krispy Kreme based on the K² Asia/Krispy Kreme Exclusivity Agreement—which K² Asia described as the agreement in which Krispy Kreme granted K² Asia exclusive rights to negotiate agreements for franchise rights

in the Philippines—Krispy Kreme argued that "the contract . . . which [wa]s referred to . . . as the 'Exclusivity Agreement'—also was executed by 'K² Asia Ventures, Ltd.' " Moreover, Krispy Kreme contended that the only evidence of the existence of K² Asia related to an entity named K² Asia Ventures G.P., a Cayman Island company, which was not a party to the civil suit. Krispy Kreme argued that it was entitled to summary judgment on all claims because K² Asia had failed to produce any evidence that K² Asia Ventures existed.

On 28 May 2015, K² Asia filed its brief in opposition to Krispy Kreme's motion for summary judgment. In pertinent part, K² Asia argued that if the trial court determined that K² Asia was not a real party in interest, Krispy Kreme was still not entitled to summary judgment. K² Asia quoted General Statutes, section 1A-1, Rule 17(a), as follows: "***[n]o action shall be dismissed* on the ground that it is not prosecuted in the name of the real party in interest** *until a reasonable time has been allowed after objection* for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and ***such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.***" After stating that "the court should order a continuance" to allow the real party in interest a reasonable time to be brought in and plead, K² Asia asserted that

> [o]n a motion for summary judgment for lack of the real
> party in interest, a trial court should either correct  [K²

Asia]'s error itself or refuse to hear the motion for summary judgment until the real party in interest is substituted for the plaintiff.

. . . .

Therefore, even if the [c]ourt believes that K² Asia Ventures is not the real party in interest in this action, pursuant to Rule 17, it must permit [the real party in interest] to be substituted in.

. . . .

. . . [I]n the event that the [c]ourt finds that K² Asia Ventures is not the real party in interest, [K² Asia] respectfully reserves its right to substitute K² Asia Ventures G.P. as the real party in interest.

Over three years later, on 13 November 2018, the trial court entered its order in response to Krispy Kreme's motion for summary judgment. The court noted that Krispy Kreme's motion for summary judgment, filed 7 May 2015, raised the issue of what entity was the real party in interest; however, "[i]nterestingly, neither the named [K² Asia] nor Defendant[ Krispy Kreme] have calendared the matter for hearing." The court summarized K² Asia's arguments in opposition to Krispy Kreme's motion as follows:

- o K² Asia Ventures is K² Asia Ventures G.P. [a Cayman Island company incorporated on 30 July 2004] and any failure to include the suffix "G.P." in the caption was a misnomer;

- o K² Asia Ventures G.P. ratified the pre-incorporation [MOU], making it the proper party to sue on the claims that arise from such contract;

> o  K² Asia Ventures G.P. is K² Asia Ventures, Ltd.
>
> o  Krispy Kreme is judicially estopped from contending K² Asia is not the real party in interest because it has admitted that K² Asia exists and is the property party to this litigation[.]

The court stated that upon its review of the arguments presented, "the primary basis for [K² Asia]'s argument that K² Asia Ventures is K² Asia Ventures G.P. and that K² Asia Ventures G.P. is K² Asia Ventures Ltd.; is 'it's because we say it is.'"

The court cited Rule 17 of our Rules of Civil Procedure.

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

N.C. Gen. Stat. § 1A-1, Rule 17(a) (2019).

In its order, the court stated that

> [it declines] to substitute a party on its own motion or upon the invitation extended by [K² Asia] in its brief. This case has been pending since 2009. [K² Asia] has not filed a motion to substitute the Cayman Island company named K² Asia Ventures G.P. as the real party in interest. However, [K² Asia] did . . . "reserve its right to substitute K² Asia Ventures G.P. as the real party in interest" in the event the [c]ourt found that K² Asia Ventures is not the real party in interest.

> It is not reasonable, in the [c]ourt's view or opinion, for [K² Asia] to wait more than nine years after [K² Asia]'s case was filed, and more than three years after a clear objection was voiced by [Krispy Kreme] that the case was not being prosecuted in the name of the real party in interest, to exercise its right to substitute the name of the real party in interest.

The court then stated that it interpreted Krispy Kreme's motion for summary judgment as a motion to dismiss the action for K² Asia's failure to prosecute or to comply with the Rules of Civil Procedure, namely Rule 17(a), and the failure to prosecute its claims in the name of the real party in interest. "The [c]ourt finds and concludes that, based on the paper submitted and the protracted history of this case, K² Asia Ventures (nothing else appearing), is not the real party in interest." The court elected to treat Krispy Kreme's motion for summary judgment as a Rule 41(b) motion for involuntary dismissal.

We hold that the trial court did not abuse its discretion by declining to *ex mero motu* substitute the real party in interest for K² Asia or by denying K² Asia's reservation of the right to substitute K² Asia Ventures G.P. as the real party in interest, where K² Asia failed to do so pursuant to Rule 17 over a three year period. Accordingly, on this argument, K² Asia is overruled.

### *Misnomer of a party*

K² Asia argues that the trial court erred by failing to address the issue of misnomer of a party. We disagree.

K² Asia contends that there was never a question that it was incorporated in the Cayman Islands and asserts the following:  "while in the [Exclusivity Agreement] [Broock] used 'K2 Asia Ventures **Ltd.**' instead of 'K2 Asia Ventures, **G.P.**,' " there is no indication Krispy Kreme was misled about the entity with which it was contracting.  "[Though] the trial court concluded that the only way it could tell that K2 Asia Ventures, **Ltd.** is the same as K2 Asia Ventures **G.P.**, was because [Broock] said so.  That is of course true, as no one can know my thoughts as to the use of the 'K2 Asia Ventures, Ltd.' as [Broock] did except [Broock]."

In essence, K² Asia argues that K² Asia Ventures, Ltd.—named in the Exclusivity Agreement with Krispy Kreme and the MOU with Max's Group—is not a registered corporation[1] but is the same entity as K² Asia Ventures G.P., which is a company registered in the Cayman Islands.  K² Asia Ventures G.P. is the same entity as K² Asia—the named plaintiff in the current civil suit—and all three entities represent the real party in interest.

In support of its argument that corporate misnomers are insufficient to warrant dismissal of an action, K² Asia cites *Troy & N. Carolina Gold Mining Co. v. Snow Lumber Co.*, 170 N.C. 273, 277, 87 S.E. 40, 42 (1915) (reasoning that in the context of the transference of property by deed, "[a] misnomer does not vitiate [the deed], provided the identity of the corporation with that intended to be named by the

---

[1] In its brief to this Court, plaintiff asserts that Krispy Kreme reserved the name K² Asia Ventures Ltd. in the Cayman Islands before filing its motion for summary judgment.

parties is apparent"); and *Tomika Invs., Inc. v. Macedonia True Vine Pent. Holiness Ch. of God*, 136 N.C. App. 493, 524 S.E.2d 591 (2000) (discussing *Troy & N. Carolina Gold Mining Co.*, 170 N.C. 273, 87 S.E. 40). In reviewing "the disparity in the corporate name, our Supreme Court stated that '[a]s to the plaintiff being described by the wrong name in the deed, this is at most but a misnomer or latent ambiguity, which can be explained by parol evidence so as to fit the description to the person or corporation intended. . . . A corporate name is essential, but the inadvertent or mistaken use of the name is ordinarily not material if the parties really intended the corporation by its proper name.' " *Tomika Invs.*, 136 N.C. App. at 496, 524 S.E.2d at 594 (alterations in original) (citation omitted); *see also id.* at 497, 524 S.E.2d at 594 ("[T]here is only a latent ambiguity in the deed, and no evidence that [the] defendant was prejudiced by the misstatement of Tomika's corporate name. [The d]efendant knew it was dealing with a corporation named 'Tomika Investment' or 'Tomika Investments,' of which [the] defendant Latimer was President. Concurrently with the execution of the deed, Tomika executed a lease with option to buy to the defendant, and impressed its corporate seal bearing its correct corporate name on the lease. We hold that the error in designating the grantee in the deed from [the] defendant Macedonia was not sufficient to void the deed as a matter of law, and hold that the trial court correctly granted summary judgment on this issue.").

K² Asia's argument regarding misnomer of party names is well taken. There is no dispute that Krispy Kreme contracted with Broock's business entity or for that matter, that Max's Group contracted with Broock's business entity. However, Broock's business entity with which Krispy Kreme and Max's Group contracted is not the business entity Broock registered. Moreover, the business entity Broock registered is not the entity in the current civil suit named in the complaint as plaintiff, K² Asia. Nothing else appearing, for this Court to hold K² Asia to be a real party in interest, we would necessarily endorse the existence of a business entity for which there is no evidence of existence other than "because we say it is." We do not so hold. Therefore, K² Asia's argument, on this point, is overruled and the trial court's 13 November 2018 order is

AFFIRMED.

Judges ZACHARY and COLLINS concur.